ANTHONY R. RAINIER et al. *vs.* WILLIAM C. HOWELL
et al., trustees.

1. Where the whole equity of a bill rested upon the fact that the defendants were the trustees of a church, and as such were violating their trust; and there was no distinct allegation in the bill that the defendants *were such trustees,* or that there *existed* any such corporate body, nor any statement *of the manner* in which the trust they were charged with violating was committed to them—

2. *Held* that the informalities and omissions in the bill were of such a character as could not be cured or waived by the pleadings or by consent.

3. The Court of Chancery will go a great way in protecting trust property, even to examining into the creeds and doctrines of religious societies, if the nature of the trust depends upon them.

4. But it must appear in the bill that the trustees are perverting the property entrusted to them to uses and purposes inconsistent with that trust, and that the matters complained of were not such as had been committed to their discretion; and for this purpose the court must be able to ascertain the limits of their authority over the property under their charge.

This case was argued before the Chancellor, February Term, 1852. The defendants having answered, now move to dissolve the injunction, which had been allowed by a master.

*Mercer Beasley,* for the motion.

*E. W. Scudder, contra.*

THE CHANCELLOR. The complainants are members of "The Methodist Episcopal Church of the City of Trenton," and have exhibited this bill on behalf of themselves and others, members of the said church, against the defendants, who are the trustees of the same.

The complaint is that the defendants, as trustees, have resolved to pew the church edifice in which the congregation worship, and to sell and rent the pews, or both, and are preparing and intend to carry the resolution into effect, and that

they are painting, papering and repairing the said edifice at an expense beyond the means of the congregation.

On application to the master, an order was made for an injunction, which was issued, restraining the said defendants "from employing or permitting any person or persons to pew the said church, and from selling or renting, or both selling and renting, the pews of the said church, or sittings therein, and from imposing the expenses of painting, papering and repairing the said church, beyond the present means of the church, and in such way as to embarrass and increase the present indebtedness."

The defendants have answered the bill, and now move to dissolve the injunction.

I am much embarrassed in deciding this motion, on account of informalities and omissions in the bill. They were not noticed on the argument, and as no advantage is taken of them by the answer, I should have been willing to overlook them, were they of a character to be cured or waived by the pleadings or by consent.

The whole equity of this bill rests upon the fact that the defendants are the trustees of "The Methodist Episcopal Church of the City of Trenton," and that as such are violating their trust. And yet there are no distinct allegations in the bill that the defendants are such trustees, or that there exists any such corporate body as "The Methodist Episcopal Church of the City of Trenton," nor any statement of the manner in which the trust they are charged with violating was committed to them. And whether these trustees are incorporated under the statute to incorporate the trustees of religious societies, or by a special law, or whether they are incorporated at all, are all left to conjecture.

It is true, taking the bill and answer together, we may draw inferences which probably are correct, but it is very unsatisfactory to be driven to this necessity, and will not answer where the material and substantial matters of the bill are involved, and in a case exciting so much interest and so important as the one before the court.

Again. The very essence of the complainants' case consists in this, that "The Methodist Episcopal Church of the

City of Trenton " is connected, and is in ecclesiastical union with the Methodist Episcopal Church of the United States, and governed by its rules, discipline and usages. This is the foundation upon which the complainants build ; and yet, what that ecclesiastical body is, of whom composed, what called, how organized, or how the Trenton church, as a branch, is connected with it, we are not informed.

I do not mention these matters from a disposition to make any unnecessary criticism upon the bill. They are real embarrassments in the complainants' way, and together with others to which I shall refer, render it impossible for me to decide, upon these pleadings, the important question which was intended to have been submitted for the decision of the court.

The Methodist church of which the defendants are the trustees, was organized in the city of Trenton as early as the year 1772. It was established, and has been since conducted, as the answer admits, according to the regulations, discipline and usages of the Methodist Episcopal Church of the United States.

In the year 1837, the then church edifice of this society being too small to accommodate the increased numbers of the congregation, the present building was erected. The lot upon which it stands was conveyed by deed to " The Trustees of the Methodist Episcopal Church of the City of Trenton," their successors and assigns. The subscription book in which the names of subscribers were recorded, was headed as follows : " Whereas, the house in which the Methodist Episcopal Church in Trenton has for years past worshiped, is too small, and otherwise inconvenient ; and whereas, the society, at a meeting held on the 23d instant, unanimously resolved to build a new one suited in size and structure to accommodate the congregation, we, whose names are undersigned, do promise to pay to the trustees of the Methodist Episcopal Church of the city of Trenton, the sums by us respectively subscribed, in four quarterly payments." The bill alleges " that the subscriptions were made with the express understanding that the said church was to be erected, and in all

respects managed and conducted according to the known and established regulations, discipline and usages of the Methodist Episcopal Church." This the answer admits.

The bill further alleges that it was the understanding of the subscribers, that the church was to be, and continue, a free-seated church, and no pews were to be sold or rented. It is insisted the said trustees hold the property subject to this trust, and that to sell or to rent the pews is a violation of it. This charge and the inference are denied by the answer.

The subscription was in writing. No such condition is annexed to it as that the church was to be and continue a free-seated church, and no pews sold or rented. The subscriptions were made to build a Methodist Episcopal Church. They were payable to "The Trustees of the Methodist Episcopal Church of the City of Trenton," to be devoted to that object.

No one or more of the subscribers can come forward now and ask the interference of the court, on the ground that they subscribed upon some understanding which the trustees are about to violate. Various representations might have been made, wholly unauthorized, to different individuals, to induce them to subscribe. But the violation of every promise made to the subscribers would not justify an interference with this religious society in the management or disposition of its property.

Nor has the court a right to interfere, upon the grounds alleged in the bill—that a majority of the members of the congregation are opposed to the proposed action of the trustees—or that the trustees are making additions to or alterations in the property, which are extravagant, and at a cost beyond the means of the congregation.

A Court of Chancery will go a great way in protecting trust property. There is nothing which it undertakes with greater reluctance than that of examining into the creeds and doctrines of religious societies, and yet it will not shrink from the discharge of this duty, however delicate or embarrassing, if the nature of the trust depends upon them.

In this case, although the trust is not expressed in the deed to the trustees, yet the corporate name in which the conveyance is made to them, and by which they hold the property, and the contemporaneous acts of the corporators, sufficiently and clearly indicate the nature of the trust. *Miller* v. *Gable*, 2 *Denio's Rep.* 548. But the defendants admit the trust, and there is no difficulty as to this part of the case.

Are the defendants violating that trust? They are charged with so doing, in that they have resolved to pew the church edifice, and to sell or rent the pews. As I have already suggested, because a majority of the members of the congregation are opposed to the measure—or because of its unnecessary extravagance—or because it will involve the congregation in a debt which it will be embarrassing for them to pay—any or all of these matters, and upon which the bill lays so much stress, are no violation of any trust which this court can protect.

These defendants may betray the confidence which has been reposed in them—they may exercise their authority so as to disturb the harmony and destroy the usefulness of the religious body they represent—they may disregard the remonstrances of their brethren and spiritual teachers, and yet such actions be beyond the control of the court. For such moral delinquencies they must answer before another tribunal. I do not mean to insinuate that these defendants are guilty of any misconduct. The charges were made very boldly on the argument and promptly denied. I refer to them simply to define the jurisdiction of the court, and to deny its authority to interfere on any such grounds.

The question is, are the defendants perverting the property entrusted to them, to uses and purposes inconsistent with and subversive of that trust?

It is evident the case intended to be made by the bill is this: that the converting of a free-seated church into one in which the pews are rented or sold, is subversive of the discipline and usages, and in direct violation of the prescribed rules of some ecclesiastical body in that church, which, according to the church government of the Methodist Episco-

pal Church controls the trustees, leaving with them no discretion in the matter. Such was the question discussed upon the argument. But it is not presented by the pleadings.

The power to regulate the sittings in the church must be lodged somewhere. *Prima facie,* this power is with the trustees, and unless some prescribed rules are shown depriving them of its exercise, it is committed to the trustees.

The bill alleges that the trustees do not possess the power. But why? Who does possess it? What are the rules, and by whom prescribed, which control their action? No answers to these questions are to be found in the bill; and yet it is manifest, unless the court is informed as to these particulars, it cannot interfere with the trustees in the exercise of the power. How can the court decide that the trustees are violating their trust, unless it can ascertain the limits of their authority over the property in their charge?

The bill does indeed allege that the trustees are acting "in direct violation of the discipline and usages of the Methodist Episcopal Church." The answer denies this, and affirms that the regulations of the pews, and the appropriation of them as free-sittings or otherwise, is a matter in no wise affected or controlled by the discipline, usages or prescribed rules of any ecclesiastical authority in the church, but is submitted entirely to the discretion of the trustees.

But in violation of the discipline and usages of what church? Is "the Methodist Episcopal Church of the City of Trenton," or "the Methodist Episcopal Church of the United States" referred to?

The facts are, that there is an association of ministers, or preachers of the gospel, called and known by the name of "The Methodist Episcopal Church in the United States"— that the government of the said church is vested in one delegated general conference, a limited number of annual conferences, and an indefinite number of quarterly conferences. The general conference is the legislative council for the whole church, and the several societies and churches of which the Trenton church is one, are united as parts of one common church, and are subject to the government, and

are regulated and controlled by the laws of the general conference. The power to prescribe or change the government and discipline of the Methodist Episcopal Church is vested in the general conference, and the several organizations of the church are regulated and governed by the rules it prescribes.

It follows, then, that these trustees are subject to this church government; and if the general conference have prescribed any rules or regulations touching the appropriation of the pews, the trustees must conform to them and act within the limits prescribed. Whether this matter is left to the discretion of the trustees or not, must depend upon the action of the general conference in the premises. There is no other ecclesiastical body that controls the trustees. The trust reposed in them is to manage the temporalities of the church committed to their superintendence, in a manner conformable to the rules, discipline and usages of "The Methodist Episcopal Church of the United States."

But, although these are matters which may be ascertained by inquiry, no facts can avail the complainants, unless they are incorporated in their case.

All information must be derived from the bill and answer. The court must decide on the case as the complainants make it in their pleading.

Looking at the bill alone, it is very doubtful whether the weight of evidence derived from the facts and circumstances therein stated, is not that the matter complained of is one of discretion committed to the defendants.

In support of the allegation that the actings and doings of the defendants are in violation of their trust, it is stated that shortly after it was made known that the trustees intended to "*pew*" the church, the members of the church held a meeting, at which they remonstrated against the proposed measure. And yet the bill does not allege they made any objection on the ground that any rules, discipline or usages of the church would be thereby violated, but, on the contrary, shows that they viewed it simply as a matter of expediency, and passed the following resolution : " That in the

opinion of this meeting, there is no necessity for pewing the church, on account of the difficulty in collecting funds to pay the just debts of our church, believing, as we do fully, that the membership has always been, and still are willing, to pay those expenses, if the proper application had been made to them for that purpose."

And subsequently to this meeting of the congregation, at a meeting of the quarterly conference, composed of all the traveling and local preachers, exhorters, stewards and the presiding elder, to whom the board of trustees are responsible, as the bill alleges, and to whom they are required to present a report of their acts during the year, the subject of this controversy was taken under consideration and advisement. The following preamble and resolutions were passed: " Whereas, The trustees have announced through the pulpit that they have appointed a committee to ' pew ' this church immediately; and whereas, it is the opinion of this quarterly conference that there is no necessity for such measure, and that it would be very prejudicial to the interest of the church; therefore, it is resolved, first, that this quarterly meeting conference is opposed to this measure, and respectfully requests the trustees to re-consider their resolution, and not proceed with the work.

"Second. *Resolved*, That a copy of this preamble and resolutions be furnished to the board of trustees at their next meeting by the recording steward."

How is it, that a body, composed as this, of men familiar with their church government, its regulations, discipline and usages, after having this subject under deliberation, and coming to the determination to express in a formal manner, and in writing, their opposition to it, should place their objection on the ground of expediency merely, and without intimating that they considered it a violation of the rules, discipline or usages of their church ? They may have had good reasons for confining the expression of their opinion simply to the expediency of the matter.

I only refer to the circumstance, in connection with others I have mentioned, in order to point out the error into which

the complainants seem to have fallen, in supposing that this court could interfere with the action of these defendants, according to the judgment of the individual who presides here, of the expediency of the proposed measure.

Whether these defendants, as trustees, have any right to " pew " the church edifice and to sell or rent the pews, I cannot decide upon the pleadings before me. If there are rules prescribed by the general conference which forbid it, and the Trenton church is in community with the general conference, it would clearly be a breach of trust, calling for the action of this court, if the defendants attempted to make a disposition of the property confided to their care, in violation of those rules, and in a manner subversive of the discipline of the church.

Sincerely hoping that the unfortunate differences existing between the parties may be amicably arranged, and no further appeal to this court be necessary, I must order the injunction dissolved.